### CARTIER et al. v. DOYLE, U. S. Internal Revenue Collector.

(District Court, W. D. Michigan, S. D. August 7, 1920.)

1. **Internal revenue ☞7—Income from sale of timber land attributed to partnership's business of dealing in lumber.**

   Under Act Oct. 3, 1917, § 201 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6336⅜b), providing, relative to the excess profits tax, that all trades and businesses in which a partnership or corporation is engaged shall be treated as a single trade or business, etc., income of a partnership dealing in lumber derived from an isolated sale of timber land must be attributed to the business of dealing in lumber.

2. **Internal revenue ☞7—Partnership having invested capital less than that fixed not entitled to complain of method of determining.**

   Under Act Oct. 3, 1917, §§ 201, 209, 210 (Comp. St. 1918, Comp. St. Ann. Supp. 1918, §§ 6336⅜b, 6336⅜j, 6336⅜k), imposing an excess profits tax at different rates on partnerships having and those not having an invested capital, and providing a method of determination when the invested capital cannot be satisfactorily determined, a partnership which had invested capital, not nominal in amount, but less than the arbitrary or supposititious invested capital fixed under the statute, could not complain of the method employed in fixing it; the tax being correspondingly diminished.

3. **Internal revenue ☞7—Persons buying and selling lumber held not "brokers."**

   Partners buying lumber from manufacturers, reselling it to their own customers, and employing a large amount of capital, were not "brokers," as respected liability for the excess profits tax, though they conducted the business personally with the existence of a small clerical office force.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Broker.]

4. **Statutes ☞219—Departmental regulations are aids to interpretation, but cannot change statute.**

   While in doubtful cases departmental regulations may be aids in the construction and interpretation of taxing statutes, they can neither add to nor subtract from plain congressional enactments.

5. **Internal revenue ☞7—Property of partners pledged as security for borrowed money is part of "invested capital."**

   Under Act Oct. 3, 1917, §§ 201, 209 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 6336⅜b, 6336⅜j), imposing excess profits taxes at different rates on partnerships having and those not having an invested capital, where a firm's working capital was borrowed on notes of the firm, to

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

secure which property of the individual partners was pledged, the property so pledged was a part of the "invested capital," though by express provision of the statute invested capital does not include borrowed money.

In Equity. Suit by Charles E. Cartier and another, copartners doing business as the Cartier-Holland Lumber Company, against Emanuel J. Doyle, United States Collector of Internal Revenue for the Fourth Collection District of Michigan. Judgment for defendant.

Butterfield, Keeney & Amberg, of Grand Rapids, Mich., for plaintiffs.

Myron H. Walker, U. S. Dist. Atty., of Grand Rapids, Mich., and Aubin L. Boulware, of Washington, D. C., for defendant.

SESSIONS, District Judge. Cartier-Holland Lumber Company is a partnership composed of Charles E. Cartier and Edward M. Holland, and engaged in the business of buying, selling, and dealing in timber, lumber, and other forest products. The net income or profits of the firm during the taxable year 1917 amounted to $47,018. Of this sum, $20,353 resulted from an isolated sale of timbered land, and the balance from the regular or customary lumber business of the partnership. The company has never owned any lands, timber, plant, mill, or yard, and has never done any manufacturing or carried any stock of manufactured lumber. Its principal business consisted of buying lumber from manufacturers and reselling the same to its own customers. The business was conducted by the partners personally, with the assistance of a small clerical office force, one bookkeeper and two stenographers. Since its organization, in 1912, the firm has at all times been a heavy borrower of money. According to its books, on January 1, 1917, the company's indebtedness to banks, for borrowed money was the sum of $36,300, and its other indebtedness, presumably for lumber purchased, amounted to $12,309.22, making a total indebtedness of $48,609.22; its accounts and bills receivable probably representing lumber sold, aggregated $39,281.72; and its other assets, including petty cash, office furniture, insurance paid, and cash in bank, amounted to the sum of $2,108.65, making a total of assets of $41,390.37. In other words, at the beginning of the taxable year, the liabilities of the firm exceeded its assets by the sum of $7,218.85. The account of each member of the firm was then several thousand dollars overdrawn. At the end of the year 1917, the firm assets exceeded its liabilities by nearly $14,000, which consisted entirely of profits made during the taxable year.

Plaintiffs' articles of agreement of copartnership contained the following provision:

"The paid-in capital of the partnership is to be thirty thousand ($30,000.00) dollars, any or all portion of which amount is to be furnished to the partnership by above-named Charles E. Cartier as the requirements of the partnership appear, and upon the note or notes of such partnership; such note or notes not to be made transferable, nor made items of record. Such notes are to be paid at the earliest practicable opportunity out of the net earnings of the partnership business, and to bear legal rate of interest."

For a time, in carrying out this provision of the partnership agreement, plaintiff Cartier borrowed money from the banks upon his own note, secured by collateral, and furnished the same to the company. Later, and probably before January 1, 1917, the agreement was modified, and working capital was obtained by borrowing money from banks upon firm notes, indorsed by both members of the firm and secured by collateral furnished by Cartier; the property so pledged as collateral security in all cases and at all times being of greater value than the face of the notes. This method was pursued during the entire year 1917.

Plaintiffs, as copartners, made due return of net income of $47,018 for the year 1917, and voluntarily paid an excess profits tax, computed at 8 per cent., in accordance with the provisions of section 209 of title II of the Act of October 3, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6336⅜j), and amounting to $3,761.44. Apparently their right to a deduction of $6,000 from the income before computing the tax was inadvertently overlooked. Thereafter the Commissioner of Internal Revenue, claiming that plaintiffs were not entitled to the benefit of the provisions of section 209 of the Act of October 3, 1917, but were taxable under the provisions of sections 201 and 210 of that act (sections 6336⅜b, 6336⅜k), assessed against them an additional excess profits tax for 1917 amounting to $9,027.46. Plaintiffs paid the additional tax under protest and have brought this suit for its recovery.

The conclusions reached upon questions of law involved in this case may be thus summarized:

[1] 1. Plaintiffs' contention that, in the assessment of excess profits taxes, the income derived from the single timberland deal, amounting to the sum of $20,353, must be considered and treated by itself, and separate and apart from other partnership income or profits, is negatived, in express terms, by the statute here under consideration:

"For the purpose of this title every corporation or partnership not exempt under the provisions of this section shall be deemed to be engaged in business, and all the trades and businesses in which it is engaged shall be treated as a single trade or business, and all its income from whatever source derived shall be deemed to be received from such trade or business."

Confessedly the company's principal business was dealing in lumber, and, under this statute, its entire income must be attributed to that business.

[2] 2. If, during the year 1917, Cartier-Holland Lumber Company had invested capital, within the purview and meaning of that term as employed in the statute, more than nominal in amount, excess profits taxes upon its income could not be assessed under the provisions of section 209 of the statute, and, if the amount of such invested capital could not be satisfactorily determined, excess profits taxes must have been assessed under sections 201 and 210 in accordance with proper regulations prescribed by the Commissioner of Internal Revenue. If the lumber company had invested capital more than nominal in amount, plaintiffs are not in a position to complain of the regulations promulgated or of the method employed in determining

the amount of the firm's invested capital, which forms the basis of the computation of the taxes, because, under the undisputed evidence, the arbitrary or supposititious invested capital fixed upon was larger in amount than the invested capital actually possessed and employed, and the taxes imposed were correspondingly diminished. These taxes are assessed upon percentages of income to invested capital. The larger the capital, the smaller the percentage and resulting tax.

[3] 3. Plaintiffs are not brokers, within any accepted definition of that term. They are paid neither a salary nor commissions for their services. They buy and sell lumber, and undertake and assume all the risks and enjoy all the benefits of a merchandising business. They employ a large amount of capital; their income is dependent upon their personal services and efforts only in the same way and to the same extent that the farmer who works his own farm or the merchant who conducts his own store derives his income from his individual endeavors.

[4] 4. The rights of these parties cannot be made to depend upon nonstatutory classifications, regulations, or definitions. The statute applies to all trades and businesses, without regard to their class or character. While, in doubtful cases, Departmental regulations may be an aid in construction and interpretation, they can neither add to nor subtract from plain congressional enactments. In this instance, differences in the meaning of the terms "invested capital" and "capital" are wholly immaterial. If Cartier-Holland Lumber Company had any invested capital, it was substantial, and not merely nominal, and plaintiffs must fail. On the other hand, if the company had no invested capital, plaintiffs are entitled to recover, regardless of the amount of its borrowed or other noninvested capital.

[5] That the partnership was doing business upon borrowed money is beyond dispute, and that invested capital does not include borrowed money is settled by the express terms of the statute; but it by no means follows that plaintiffs are right in their contentions. The term "invested capital," as here used, includes all working capital consisting of money or property employed in the business or for its benefit, and furnished or "paid in" by one or more of the partners. Applying this test, it is clear that this partnership had invested capital within the purview' and meaning of the statute. In the determination of this question, money borrowed from banks or individuals other than members of the firm, and solely upon the credit of the firm, must be excluded and may not be considered; and, for the purpose of this decision, it is unnecessary to determine whether, as claimed by counsel for defendant, money borrowed upon the notes of the firm, indorsed by the individual partners, and largely, if not wholly, upon the credit of the latter, is to be deemed invested capital of the partnership. If the original partnership agreement had been carried out and performed, it would not be claimed that the moneys paid in and furnished by plaintiff Cartier in accordance with its terms would not constitute invested capital of the firm, without regard to the manner in which or the source from which such moneys were ob-

tained by him. The method or plan adopted and used in 1917 was a change in form rather than in substance. The evidence shows conclusively that, for every dollar of money borrowed from the bank, property of one of the members of this firm, exceeding in value the amount of the loans, was deposited with the bank and pledged as collateral security for the repayment of such borrowed money. The property so furnished and pledged became a part of the working capital, and was used and employed in the business of the company to the same extent as if it had been paid directly into the firm treasury.

Judgment will be entered for defendant, with costs of suit to be taxed.